# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert L. Stabnow, | Case No. 19-cv-1664 (NEB/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tony Lourey, Nancy Johnston, Jannine Hebert, James Berg, David Bornus, Kevin Moser, Terry Kneisel, Peter Puffer, Nancy Stacken, Jordan Goodman, Kris Huso, Laurie Severson, Ryan Fahland, Jana Brister-Korby, Debbie Thao, Charles Fai, Tina Olsen, David Avril, Ross Peterson, Dr. Amy Farmer, Allison Immel, Randy Gordon, Tayah Zuk, the Minnesota Sex Offender Program, the State of Minnesota, and Jodi Harpstead, | |
| Defendants. | |

Robert L. Stabnow, 1111 Hwy. 73 Moose Lake, MN 55767, *pro se*

Roger Yang, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55106, for Defendants

HILDY BOWBEER, United States Magistrate Judge

Plaintiff Robert L. Stabnow, a civilly-committed client of the Minnesota Sex

Offender Program ("MSOP"), brings this action pursuant to 42 U.S.C. § 1983[1] alleging

that Defendants violated his First, Eighth, and Fourteenth Amendment rights. Plaintiff

---

[1] Plaintiff also includes 42 U.S.C. §§ 1997(d), 2000a-2, and 2000b in the caption of the Amended Complaint [Doc. No. 4], but those statutes are not mentioned anywhere else in the pleading.

brings additional state law claims and challenges the constitutionality of Minn. Stat.

§ 253D. The matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 40],

Plaintiff's Motion for Temporary Restraining Order [Doc. No. 48], and Plaintiff's Motion

for Leave to File Second Amended Complaint [Doc. No. 81]. For the reasons set forth

below, this Court recommends that the motion to dismiss be granted, the motion for

injunctive relief be denied, and the motion for leave to amend be denied.[2]

## I.    Background[3]

During the relevant events, Plaintiff was civilly committed at the MSOP facility in

Moose Lake, Minnesota. Essentially, he contends that he is being unfairly disciplined and

that prescribed treatment violates his religious beliefs. (Am. Compl. ¶ 3 [Doc. No. 4].)

In August of 2018, Plaintiff submitted a treatment consent withdrawal notice. (*Id.*

¶ 47.) From January 1 through February 12, 2019, Plaintiff was denied vocational

programing due to his refusal to comply with treatment. (*Id.* ¶ 49.) On February 14, 2019,

Plaintiff was moved to the Behavior Therapy Units because of an "inappropriate outburst

of anger." (*Id.* ¶¶ 50-51.) During February 2019 and March 2019 Plaintiff communicated

to Defendant Jana Brister-Korby and non-party Will Halmon that the "treatment used at

MSOP was in conflict with his Christian beliefs" and that he was frustrated with the

---

[2]  A motion for leave to amend the complaint is a nondispositive motion and therefore typically addressed in an order issued by a magistrate judge.  Because Plaintiff's motion to amend relates substantially to the issues raised in the motion to dismiss and the same legal standards will apply, the Court will address the motion to amend in this Report and Recommendation.

[3]  This Background section sets forth the relevant and objective factual allegations from Plaintiff's 56-page Amended Complaint [Doc. No. 4], omitting legal conclusions and gratuitous or inflammatory language.

clinicians' attempts to get him back into treatment. (*Id.* ¶¶ 52-53.) On April 5, 2019, Plaintiff initiated an informal grievance against his clinical team addressed to Defendant Brister-Korby. (*Id.* ¶ 55.) Plaintiff was upset to receive a response from Defendant Tayah Zuk and protested several times, until Defendant Zuk initiated an Incident Command Response System. (*Id.* ¶¶ 55-57.) Plaintiff was arrested by "the A-Team" after making several verbal requests to see the supervisor. (*Id.* ¶¶ 57-64.) During this arrest, Plaintiff "sustained injury to his right hand little finger and was bruised in other areas on his body for several weeks afterwards." (*Id.* ¶ 64.) After being evaluated by health services, Plaintiff was given Tylenol and ice for his hand. (*Id.* ¶¶ 65-66.) On April 18, 2019 Plaintiff "wrote two requests that detailed religious discrimination and general harassment" to Defendants Brister-Korby and Terry Kneisel. (*Id.* ¶ 67.) Within a week Plaintiff received a response from both Defendants resolving the requests. (*Id.* ¶¶ 68-70.)

On April 30, 2019, Plaintiff claims to have been "assaulted" by another client and received a Behavioral Expectation Report ("BER") for disturbing others due to the fact that he "got loud when his assailant tried to intimidate him by invading [Plaintiff's] personal space when he was confronted for his behavior." (*Id.* ¶ 71.) On May 1, 2019, Plaintiff wrote to Defendant Kevin Moser about the alleged assault. (*Id.* ¶ 72.) On May 5, 2019, Plaintiff received a BER for failure to comply and abuse/ harassment. (*Id.* ¶ 73.) On May 9, 2019, Plaintiff appeared in front of the Behavioral Expectations Unit ("BEU") hearing panel and received 27 days of "RS3" for the BERs he received on April 30 and May 5. (*Id.* ¶ 77.)

Plaintiff lists four causes of action in his Amended Complaint: (1) failure to

3

protect, (2) "deliberate indifference to abuse and torture," (3) willful neglect, and

(4) a constitutional challenge to Minn. Stat. § 253D. (*Id.* ¶¶ 79-84.) The Court has

construed these claims liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and

understands that Plaintiff is suing the State of Minnesota, MSOP, and a number of state

and MSOP officials for alleged violations of his First, Eighth, and Fourteenth

Amendment rights. Most claims against individual Defendants are brought against them

in their individual and official capacities, except Plaintiff assets only an individual

capacity claim against Defendant Tony Lourey and only an official capacity claim against

Defendant Jodi Harpstead. (*See* Order at 1 n.1 [Doc. No. 47].) In addition to the federal

constitutional claims, Plaintiff also brings state law claims and challenges the

constitutionality of Minn. Stat. § 253D. He requests injunctive, declaratory, and monetary

relief.

On February 25, 2020, Plaintiff filed a motion for leave to amend the Amended

Complaint. He seeks to add allegations pertaining to his failure-to-protect claim and

possibly to allege new claims of retaliation and procedural due process violations. The

Court will address the proposed new amendments and allegations in the discussion

below, following the relevant existing allegations. Plaintiff also seeks to add an entirely

new claim against the Attorney General of Minnesota and new state constitutional claims.

Defendants oppose the motion on the ground of futility.

## II.    Discussion

### A.    Eleventh Amendment Immunity

Claims against the Defendants in their official capacity for monetary damages are

barred by the Eleventh Amendment. The Eleventh Amendment provides "a state with immunity from suit in federal court by citizens of other states and by its own citizens." *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). "A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984)). All claims for monetary relief brought against Defendants in their official capacities should therefore be dismissed without prejudice for lack of subject-matter jurisdiction.

### B.     Defendants' Motion to Dismiss and Plaintiff's Motion to Amend

#### 1.     Standards of Review

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court has the duty to construe liberally a pro se party's pleadings. *Estelle*,

429 U.S. at 106. This means that even if a claim "is not pleaded with legal nicety," a court should construe the allegations so that the claim may "be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). The Court should not, however, "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* Nor should a court "assume the role of advocate." *Sneh v. Bank of N.Y. Mellon*, No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)), *R. & R. adopted*, 2012 WL 5519682 (D. Minn. Nov. 14, 2012).

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]here is no absolute right to amend," however, and a court may deny leave to amend "based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted). When a party challenges a proposed amendment on futility grounds, as the Defendants do here, the Court considers whether the amendment could withstand a Rule 12(b)(6) motion to dismiss. *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

### 2.    Eighth Amendment Claims

#### a.    Failure to Protect

A prison official, or an employee at a state civil commitment facility, may violate

the Eighth Amendment's prohibition from inflicting cruel and unusual punishments if he or she is "deliberately indifferent to the need to protect an inmate from a substantial risk of harm from other inmates." *Sorenson v. Minn. Dep't of Human Servs.*, No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, at *6 (D. Minn. Jan. 20, 2015) (citing *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)). In order for a plaintiff to successfully plead deliberate indifference, he or she must show that: "(1) when viewed objectively, the alleged deprivation of rights was sufficiently serious; and (2) the defendant, subjectively, had the requisite culpable state of mind." *Id.* "The deprivation is sufficiently serious when the official's failure to protect results in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id*. "An official is deliberately indifferent when he or she actually knows of the substantial risk and fails to respond reasonably." *Id*.

To show that a defendant had the requisite culpable state of mind, a plaintiff must allege that the defendant "actually intended to deprive him of some right" or "acted with reckless disregard of his right to be free from violet attacks by fellow inmates." *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991). Mere negligence or inadvertence is not enough. *Id.* "To establish reckless disregard by prison officials, an inmate must show that he was faced with a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk." *Id.* "Although an involuntarily committed patient . . . is not a prisoner per se, his confinement is subject to the same safety and security concerns of that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004).

Here, Plaintiff has not alleged sufficient facts that would allow the Court to

reasonably infer that any Defendant acted intentionally or with reckless disregard to deny Plaintiff of his right to be free from violent attacks by fellow clients. Plaintiff alleges that by "leaving him on a dangerous unit where clients are sent when they cannot control their behaviors," Defendants were deliberately indifferent because their "lack of action . . . resulted in Mr. Stabnow being assaulted by another client." (Am. Compl. ¶ 46.) However, Plaintiff does not plead any facts to show that any Defendants knew of a substantial risk to Plaintiff, yet acted with the requisite culpable state of mind. Accordingly, the Court recommends the claim be dismissed for failure to state a claim. The Court further recommends that dismissal be with prejudice because, given the facts already pleaded, it is not likely that Plaintiff could allege additional, plausible facts of recklessness that would save the claim. *See Jackson v. Walgreens Co.*, No. 16-0398 (JRT/FLN), 2016 WL 4212258, at *2 (D. Minn. Aug. 10, 2016).

In his motion to amend, Plaintiff proposes to add new factual allegations to bolster his failure-to-protect claim. For example, Plaintiff alleges Defendants have stripped him of his rights to be protected from abuse, neglect and maltreatment by "focusing on his past mistakes" and "harassing [Plaintiff] to participate in their program" and are "in effect trying to kill him through the intentional triggering of his depression by forcing him into long months of isolation with nothing to occupy his mind but the thoughts of all his mistakes." (Pl.'s Proposed Second Am. Compl. ¶ 3 [Doc. No. 81-1].) Additionally, Plaintiff makes general assertions that the inaction of all of the named Defendants and proposed new defendants constitute a failure to protect. (*Id.* ¶¶ 8-50.) But even if Plaintiff were permitted to amend his Complaint to add those allegations, his failure-to-

8

protect claim would still suffer from all of the same defects described above.

Accordingly, the Court concludes those new allegations would not save Plaintiff's

failure-to-protect claim and that amendment would therefore be futile.

**b.    Deliberate Indifference to Medical Needs**

It is far from clear from the allegations of the operative Amended Complaint that

Plaintiff intended to bring a claim for deliberate indifference to medical needs.

Nonetheless, in an abundance of caution, the Court will liberally construe the allegations

and address any such possible claim briefly. "[W]here a [civilly-committed] patient's

Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the

deliberate indifference standard from the Eighth Amendment." *Scott v. Benson*, 742 F.3d

335, 339 (8th Cir. 2014) (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 889-90 (8th Cir.

2006)). The standard for deliberate indifference under the Eighth Amendment "entails

something more than mere negligence, [and] . . . something less than acts or omissions

for the very purpose of causing harm or with knowledge that harm will result." *Farmer v.

Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference "is a stringent standard of

fault, requiring proof that a municipal actor disregarded a known or obvious consequence

of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). To adequately

state a claim, Plaintiff "must demonstrate (1) that [he] suffered objectively serious

medical needs and (2) that the prison officials actually knew of but deliberately

disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). In

order to survive a motion to dismiss, Plaintiff must allege sufficient facts that, if later

proved, would establish deliberate indifference to serious medical needs. *Estate of*

*Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Plaintiff alleges in this case that "health services staff evaluated [his] injuries and gave him Tylenol and ice for his injured hand and refused to provide any further treatment even though Mr. Stabnow could not move the small finger on his right hand." (Am. Compl. ¶ 66.) These facts do not allow the Court to draw a reasonable inference that Plaintiff suffered any objectively serious medical need or that any Defendant knew, but deliberately disregarded, those needs. To the contrary, Plaintiff saw a medical professional who deemed the treatment of his injuries reasonable. Additionally, de minimis injuries such as a sore finger and bruises do not qualify as an "objectively serious medical need." *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

In sum, to the extent that Plaintiff intended to bring a claim for deliberate indifference to medical needs based on the April 5, 2019 incident, the Court recommends the claim be dismissed. The Court further recommends that dismissal be with prejudice because it is not conceivable that additional facts would entitle Plaintiff to relief.

### c.    Excessive Force

Although Plaintiff has not explicitly alleged an excessive force claim, a liberal construction of the Amended Complaint potentially could reveal such a claim. The protection against excessive force has its roots in the Eighth Amendment prohibition against "cruel and unusual punishments." *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001). Since Plaintiff was civilly committed—not a prisoner—during the events giving rise to this lawsuit, the Eighth Amendment is not directly applicable here. However, "it is well established that the Constitution prohibits governmental authorities from using

10

excessive force against individuals who are being held in custody." *Martin v. Benson*, No. 09-195, 2010 WL 2925116, at *6 (D. Minn. June 14, 2010), *R. & R. adopted*, 2010 WL 2925104 (D. Minn. July 21, 2010), *aff'd*, 407 F. App'x 986 (8th Cir. 2011) (per curiam). Claims raised by civilly-committed individuals for excessive force are treated the same as claims brought by pretrial detainees, *id.,* and therefore arise under the Fourteenth Amendment's Due Process Clause, *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

To sufficiently allege a claim for excessive force under 42 U.S.C. § 1983, a plaintiff "must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The objective reasonableness test "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. In applying this standard, the Court considers the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. The Court also considers "the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (citation and internal

quotations omitted).

Plaintiff has not pleaded sufficient facts to allow the Court to draw a reasonable inference that any Defendant acted purposely or knowingly or that any force used against Plaintiff was objectively unreasonable under the circumstances described in the Amended Complaint. In fact, Plaintiff alleges no facts regarding the specific conduct of any named Defendant that he claims was excessive. The only potentially relevant facts are that the "A-Team staff falsely arrest[ed] Mr. Stabnow with excessive force where Mr. Stabnow sustained injury . . . ." (Am. Compl. ¶ 57.) Consequently, the Court recommends that Defendants' motion to dismiss be granted as to any excessive force claim. The Court further recommends that dismissal be with prejudice because it is not likely that Plaintiff could allege additional, plausible facts that could salvage this claim. *See Jackson*, 2016 WL 4212258, at *2.

### 3.    First Amendment Claims

#### a.    Retaliation

To establish a First Amendment retaliation claim, a plaintiff must show "(1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (citing *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir.2004)). The filing of prison grievances is protected First Amendment activity that is capable of supporting a viable retaliation claim. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Plaintiff alleges that BERs filed against him were done so in retaliation of "the formal grievances that he had initiated against various staff for MSOP policy violations." (Am. Compl. ¶ 37.) However, Plaintiff has not pleaded any facts that would allow the Court to arrive at this conclusion. The only factual allegations concerning any specific instance of alleged retaliation is that Defendant Zuk "violated Mr. Stabnow's freedom of speech when she wrote him up for protesting her violation of the Grievance policy when he tried to complain about clinical staff violating his rights . . . ." (Am. Compl. ¶ 39.) It is unclear what Plaintiff is claiming to be the protected speech for which he was written up, but it appears to be his protest of Defendant Zuk's alleged violation of the grievance policy, and not the actual filing of the grievance itself.

An officer's filing of a disciplinary charge, even an inaccurate or incomplete charge, does not give rise to a cause of action unless it is done so in retaliation of his having filed a grievance pursuant to established procedures. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983). Plaintiff has not alleged facts that would support a reasonable inference that Defendant Zuk's actions were taken in retaliation of Plaintiff having filed a grievance. Accordingly, the Court recommends that Plaintiff's First Amendment retaliation claim be dismissed— but without prejudice, because there are conceivable facts under which Plaintiff could allege a retaliation claim.

In his motion to amend, Plaintiff seeks to bring a new retaliation claim. Plaintiff alleges that on August 16 he filed a complaint with the office of health facility for maltreatment and abuse and that four hours later "his property and all legal documents for

this case [were] searched and compromised by Defendants and he was moved to the BTU unit." (Pl.'s Proposed Second Am. Compl. ¶ 103.) Additionally, Plaintiff claims that since he filed his first amended complaint, he has been "further isolated" and has had "property taken" or "property threatened to be destroyed unless he does the treatment." (*Id.* ¶ 125.)

Assuming *arguendo* that Plaintiff engaged in protected activity, he has not alleged facts that would create a plausible inference that any named or proposed Defendants acted in such a way that would chill an ordinary person from continuing in the activity, nor has he alleged facts that would support an unlawful motivation. Rather, Plaintiff acknowledges in the proposed amended complaint that he was issued a BER for bringing food into his room, that he was not  moved from the BTU because he had not been accountable for his actions and refused treatment, and that Defendants Goodman and Kneisel encouraged him to work with his treatment team to form a plan for moving from the BTU. (*Id.* ¶¶ 90-91, 100, 106-07, 111.) These allegations do not plead a plausible claim for retaliation.  On the contrary, they suggest that Defendants' alleged actions were motivated by Plaintiff's failure to follow MSOP policies and comply with treatment. As such, the Court recommends that the motion to amend by denied due to futility.

### b.    Free Exercise of Religion

Under the Free Exercise Clause, a plaintiff must show, in order to survive a motion to dismiss, that a regulation imposes a substantial burden on his ability to practice his religion. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). The regulation

must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

Here, Plaintiff has not alleged sufficient facts that MSOP placed a "substantial burden" on his religious exercise. Plaintiff asserts only that "the treatment used at MSOP was in conflict with his Christian beliefs and lifestyle choices," that he chose not to participate in treatment, and that Defendants withheld privileges because of his refusal to participate in treatment. (Compl. ¶¶ 31, 52.) Plaintiff does not allege that, as a result, he was without "reasonable opportunities" to engage in activities fundamental to his beliefs, or that Defendants "significantly inhibited or constrained conduct or expression that manifests some central tenant" of Plaintiff's religious beliefs. *Patel,* 515 F.3d at 813. Accordingly, the Court recommends that the claim be dismissed and that dismissal be with prejudice because it is not likely that Plaintiff could allege additional, plausible facts that could salvage this claim. *See Jackson*, 2016 WL 4212258, at *2.

### 4.    Fourteenth Amendment Due Process Claims

#### a.    Procedural Due Process

A procedural due process claim is reviewed in two steps. First, the Court must examine whether Plaintiff was deprived of a protected liberty or property interest. *Senty-Haugen*, 462 F.3d at 886 (citing *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995)). Second, if a protected interest is at stake, the Court must "consider what process is due by balancing the specific interest that was affected, the

15

likelihood that the [current] procedures would result in an erroneous deprivation, and the [governmental] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976)). Because Plaintiff "has been civilly committed to state custody as a dangerous person, his liberty interests are considerably less than those held by members of free society," though as compared to a prison inmate, he is "entitled to more considerate treatment and conditions of confinement." *Id.* (quotations and citations omitted).

Plaintiff alleges that he was not afforded any verification of statements or an investigation of stated accusations during a hearing regarding BERs he received, and that when he presented evidence of his "innocence" it was "ignored" and he received 28 days of "the highest restriction." (Am. Compl. ¶ 2.) Assuming *arguendo* that Plaintiff was deprived of a protected liberty interest, the Court must determine what process is due. The most important mechanisms for ensuring due process are "notice of the factual basis leading to a deprivation and a fair opportunity for rebuttal." *Senty-Haugen*, 462 F.3d at 888 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005)).

Plaintiff does not allege that he did not receive sufficient notice of the facts or that he did not have an opportunity to be heard before he was deprived of any liberty interest. In contrast, Plaintiff concedes that there was a hearing held and that he was allowed to present evidence for rebuttal. (Compl. ¶ 77.) "The requirements of due process are 'flexible' and 'specific to each particular situation.'" *Senty-Haugen*, 462 F.3d at 888 (quoting *Mathews*, 424 U.S. at 334), and the fact that the BEU hearing panel issued an

adverse decision does not amount to a procedural due process violation. Accordingly, the claim should be dismissed, and with prejudice because it is not likely that Plaintiff could allege additional, plausible facts that could salvage this claim. *See Jackson*, 2016 WL 4212258, at *2.

Plaintiff seeks to bring a new procedural due process claim and alleges that Defendants have segregated and isolated Plaintiff from the rest of the MSOP population, "without due process as a punishment." (Pl.'s Proposed Second Am. Compl. ¶ 4.G.) Plaintiff does not, however, plead any facts regarding what process was given, making it impossible for the Court to analyze whether the process fell short of what was due. Accordingly, the Court recommends the motion be denied due to futility.

### b.    Substantive Due Process

"To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (quotation omitted).

> To reach th[e] second element, [the Eighth Circuit has] explained that the alleged substantive due process violations must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

*Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002)) (ellipses in *Truong*). "'Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to'

17

the conscience-shocking level." *Davis v. White*, 794 F.3d 1008, 1015 (8th Cir. 2015)

(quoting *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012)).

To begin, it is not at all clear that Plaintiff intended to allege a violation of

substantive due process. In light of the Court's duty to construe the Amended Complaint

liberally, however, the Court will briefly address the claim. Plaintiff has not alleged any

facts sufficient to show that any Defendants' actions amounted to a "brutal and inhumane

abuse of official power to rise to the conscience-shocking level." *Id.* Thus, to the extent

that Plaintiff intended to allege a violation of substantive due process, the Court

recommends the claim be dismissed. The Court further recommends that dismissal be

with prejudice because it is not likely that Plaintiff could allege additional, plausible facts

that could salvage this claim. *See Jackson*, 2016 WL 4212258, at *2.

### 5.     Constitutional Challenge to Minn. Stat. § 253D

Plaintiff alleges that "MSOP is a prison that Mr. Stabnow was sentenced to

through a civil action to further punish him for the crimes that he has served out his

prison sentence for." (Am. Compl. ¶ 84.) Plaintiff further alleges that no client completes

the MSOP treatment programs because they "cannot" complete them. (*Id.* ¶ 34.) Plaintiff

asks the Court to declare § 253D unconstitutional in that it violates prohibitions against

ex post facto laws and double jeopardy.

However, the United States Supreme Court has upheld the constitutionality of civil

commitment statutes for sexually dangerous individuals. *See generally Kansas v.

Hendricks*, 521 U.S. 346 (1997). The Supreme Court reasoned that, "the confinement's

potentially indefinite duration is linked, not to any punitive objective, but to the purpose

of holding a person until his mental abnormally no longer causes him to be a treat to others." *Id.* at 347. Minnesota courts have specifically concluded that the MCTA is a civil commitment statute. *E.g.*, *In re Civil Commitment of Branson*, No. A15-0394, 2015 WL 4878012, at *6 (Minn. Ct. App. Aug. 17, 2015), *review denied* (Oct. 20, 2015); *Chamberlain v. State*, Nos. A10-63, 2010 WL 3000680, at *6 (Minn. Ct. App. Aug. 3, 2010); *In re Linehan*, 594 N.W.2d 867, 871-72 (Minn. 1999), *cert. denied*, 528 U.S. 1049 (1999).  Thus, Plaintiff's commitment under § 253D is not tantamount to "punishment" and therefore does not constitute a second prosecution. *See Hendricks,* 521 U.S. 346 at 369. Similarly, even though Plaintiff's commitment followed a prison term, it does not violate the Double Jeopardy Clause. *See id*. Finally, because § 253D does not impose criminal punishment, its application does not raise ex post facto concerns. *See Hendricks,* 521 U.S. 346 at 371. Accordingly, the Court recommends that this claim be dismissed with prejudice.

### 6.    State Law Claims

Plaintiff brings a claim for "willful neglect" and other potential state law claims (*e.g.*, false arrest and slander) against Defendants under the supplemental jurisdictional grant of 28 U.S.C § 1367. That statute provides for "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C § 1367(a). A court should decline to exercise supplemental jurisdiction over a state law claim when all claims over which the court has original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). Because this Court has recommended that all of Plaintiff's federal constitutional claims be

dismissed, the Court recommends that the District Court dismiss without prejudice for lack of subject matter jurisdiction any and all state law claims brought in this suit.

Plaintiff seeks to bring entirely new state constitutional claims. Those claims would also fail for lack of subject matter jurisdiction. In addition, there is no private right of action for damages attributable to such violations of the Minnesota Constitution.[4] Similarly, Minnesota Statutes §§ 8.03 and 8.31 do not contain a private right of action to sue the Attorney General for noncompliance. For all of these reasons, Plaintiff's proposed amendments seeking to allege new state claims are futile.

### 7.    Proposed New Claim Under 42 U.S.C. § 9501

Plaintiff seeks leave to add a claim under 42 U.S.C. § 9501. (*See* Proposed Second Am. Compl. ¶ 3.) The Court recommends the motion be denied on the basis of futility, because § 9501 does not confer a private right of action. *Semler v. Finch*, No. 07-cv-4252 (JNE/RLE), 2008 WL 4151825, at *9 (D. Minn. Sept. 3, 2008), *aff'd*, 333 F. App'x 156 (8th Cir. 2009).

### 8.    Proposed New Defendants

Plaintiff proposes to add Jodi Harpstead, Pamela Wheelock, Keith Ellison, Courtney Menton, Katherine McDowell, Mark Hansen, Staci Bovin, and Michael Pydynkowski as defendants. His motion to do so should be denied in light of the Court's recommendations that all of his claims be dismissed and that his motion to amend to add new allegations and causes of action be denied.

---

[4] The proposed new constitutional claims arise under Minn. Stat § 253B.03 and Minn. Stat. § 144.651.

20

### C.    Plaintiff's Motion for a Temporary Restraining Order

A court must consider four factors in deciding whether to grant a motion for injunctive relief: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Where there is "no chance of success on the merits," a court cannot issue injunctive relief. *Mid-Am. Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005).

For the reasons set forth in the above discussion, the Court finds that Plaintiff does not have a likelihood of succeeding on the merits of his claims in this case. Consequently, the Court recommends that Plaintiff's motion for a temporary restraining order be denied.

## III.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' Motion to Dismiss [Doc. No. 40] be **GRANTED**, as follows:

    a.  Plaintiff's federal-law claims be **DISMISSED WITH PREJUDICE**, except the claims for monetary relief brought against Defendants in their official capacities and the First Amendment retaliation claim, which should be **DISMISSED WITHOUT PREDUDICE**;

    b.  Plaintiff's state-law claims be **DISMISSED WITHOUT**

21

PREJUDICE;

2.   Plaintiff's Motion for Temporary Restraining Order [Doc. No. 48] be

     **DENIED**;

3.   Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. No.

     81] be **DENIED**; and

4.   **JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 16, 2020                    s/ *Hildy Bowbeer*
                                         HILDY BOWBEER
                                         United States Magistrate Judge


## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).